IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRISHA P. ALCOCK,

      Plaintiff,

v.

HOTEL EQUITIES, INC.,

      Defendant.

CIVIL ACTION FILE NO.:

## COMPLAINT – CIVIL RIGHTS

Plaintiff Trisha P. Alcock ("Alcock" or "Plaintiff") files this Civil Rights Complaint against the above-named defendant, Hotel Equities, Inc. and alleges as follows:

### INTRODUCTION

1.

This is a civil rights action for money damages and equitable and declaratory relief brought pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Plaintiff Trisha Alcock is an African American woman who was employed by the Defendant from January 2004 to April 14, 2014, when she was terminated for opposing race discrimination and retaliation and for filing charges of race discrimination and

retaliation with the Equal Employment Opportunity Commission.  Ms. Alcock is seeking injunctive and declaratory relief, lost pay, and compensatory and punitive damages to remedy these civil rights violations, as well as her reasonable attorney's fees and costs.

### JURISDICTION AND VENUE

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 28 U.S.C. §§ 2201 and 2202.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because the unlawful employment practices and the violations of Ms. Alcock's rights alleged below were committed in this judicial district.

### PARTIES

4.

Plaintiff Trisha Alcock is an African American woman and a citizen and resident of the State of Georgia.  She submits herself to the jurisdiction of this Court.

5.

Defendant Hotel Equities, Inc. is a Georgia corporation with its principal place of business located at 41 Perimeter Center East Suite, 510, Atlanta, Georgia 30346. It may be served by delivering process to its registered agent, Bruce H. Gaynes, 3495 Piedmont Road, Building 11, Suite 900, Atlanta, Georgia 30305.

### ADMINISTRATIVE PROCEEDINGS

6.

Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the acts of which she now complains.

7.

On or about May 6, 2014, Plaintiff received a Notice of Right to Sue from the EEOC relating to their charge of discrimination numbered 410-2014-03259.

8.

This civil action is instituted in the appropriate federal district court within ninety (90) days of the receipt of the Notice of Right to Sue issued by the EEOC.

## STATEMENT OF FACTS

### 9.

Defendant Hotel Equities, Inc. provides management, development, and consulting for hotels throughout the United States, including the Marriott and, specifically, Springhill Suites Marriott- Alpharetta, located at 12730 Deerfield Parkway, Alpharetta, Georgia 30004.

### 10.

Plaintiff was hired by Defendant in April of 2004 as a Guest Services Representative ("GSR") and, except for a two year period from 2008 until approximately 2010, Plaintiff worked full-time in that position.

### 11.

Plaintiff was first assigned to the Fairfield Inn and Suites in Alpharetta, Georgia but in 2008 began working on an as-needed basis at the Springhill Suites Marriott, also in Alpharetta.  Plaintiff worked there until becoming a full time employee at that location in approximately 2010.

### 12.

As a Guest Services Representative, Plaintiff had the job of answering phones, attending to guest needs and concerns and coordinating with other departments to address hotel matters.

13.

Beginning in 2013, a new General Manager, Brooke Stall, took over at the Springhill Suites.

14.

Prior to working for Ms. Stall, Plaintiff had never once been written up or disciplined and had always received positive performance evaluations.

15.

When Ms. Stall took over as General Manager there were five other African American GSRs and one Hispanic GSR.

16.

Not long after taking over, one of the African American GSRs left and Ms. Stall hired a white GSR in her place.

17.

Shortly after her assignment to Ms. Stall, Plaintiff began to experience a level of scrutiny of her work and work time that was greater by far than that of her white or Hispanic co-workers.

18.

It also appeared to Plaintiff that her African American coworkers were, likewise, being treated less favorably than her white or Hispanic co-workers particularly insofar as scheduling was concerned.

19.

Under Ms. Stall, Plaintiff was disciplined for infractions that either did not occur or were patently unreasonable.

20.

For example, in October 2013, Plaintiff was disciplined for allegedly taking apart guest gift bags before delivery and discussing hotel room rate changes with guests.

21.

In fact, these allegations were untrue and Plaintiff was told by Human resources that the write up would be removed.

22.

In February, 2014, Plaintiff was again written up for failing to complete a 37 item front desk checklist, which in fact was completed, although two items had been completed by a co-worker while Plaintiff was busy with guests.

23.

In an example of the lack of leniency toward African American GSRs in scheduling, Plaintiff was also threatened with termination for reporting that she could not switch scheduled work days with a co-worker despite giving advance notice of her conflict consistent with Hotel Equities' policies and procedures.

NOTICE OF DISCRIMINATION AND RETALIATION

24.

Because of this apparent difference in treatment, on or about February 28, 2014, Plaintiff contacted Hotel Equities' HR manager, Wanda Morris, to complain of possible race discrimination and retaliation.

25.

Ms. Morris dismissed Plaintiff's concerns stating that "although she had never worked with Brooke Stall or knew her very well, she did not believe Brooke would do something like that."

26.

Accordingly, on or about March 3, 2014, Plaintiff filed a charge of race discrimination and retaliation with the EEOC alleging the application of different terms and conditions of employment.

27.

On or about March 4, 2014, Plaintiff hand delivered a copy of her charge to Ms. Stall's office.

28.

On or about March 6, 2014, Plaintiff was contacted by Scott Mastley, Vice President of HR, and told that while they "wished" she "had not gone to the EEOC," he would investigate the claims by meeting with the front desk staff.

29.

Without speaking with any of the African American staff, HR concluded its investigation within a week, finding no discrimination but rather miscommunications that demanded refresher training by management.

30.

Within a month following Plaintiff's receipt of a right to sue from the EEOC and the coincidental conclusion of HR's "investigation," Ms. Stall increased Plaintiff's work load by adding items to her checklist and then terminated her employment.

31.

The reasons for Plaintiff's termination were largely manufactured and retaliatory.

32.

For instance, Plaintiff was accused of failing to send guest departure e-mails on April 4, 2014, when in fact the e-mails were sent.

33.

Plaintiff was also accused of not logging and storing lost and found items that were turned in after her shift was over and after she had left for the day.

34.

Plaintiff was accused of failing to complete "internet prospecting" on April 1 and 2, 2014, by searching for business opportunities on-line and filling out internet prospecting forms, which were in fact filled out and timely submitted.

35.

Plaintiff was accused of excessive absences despite the fact that she never received a written warning for such absences as required by policy.

36.

Finally, Plaintiff was cited for a guest complaint wherein it was alleged that Plaintiff acted rudely and disrespectfully in attempting to assist a guest with a credit card rejection.

37.

In fact, Plaintiff had been attempting to assist the guest by running multiple credit cards through the system, attempting to get bank confirmation so as to allow the guest to pay with credit and waiving company policy that calls for refusing to book a guest without cash when credit cards are rejected.

38.

Moreover, although it is not uncommon for guests to complain about GSRs, Plaintiff had only ever received one complaint from a guest during her entire work history at Springhill Suites.

39.

In addition, Defendant made no effort to inform Plaintiff of the complaint or to get Plaintiff's side of the story prior to terminating her.

40.

In sum, Defendant had no cause to terminate Plaintiff's employment apart from the hostility over her complaints of race discrimination, retaliation and the filing of her EEOC Charge of Discrimination.

DAMAGES TO PLAINTIFF

41.

The above stated actions were directed at Plaintiff in reprisal for opposing racially discriminatory practices, for filing her EEOC Charge of Discrimination and for participating in the EEOC investigative process.

42.

Defendant's actions directed toward Plaintiff were done intentionally, willfully, maliciously and in bad faith.

43.

As a result of Defendant's conduct, Plaintiff has been damaged in the terms, conditions and benefits of her employment, including the loss of pay, promotional opportunity, social security income, and medical and retirement benefits.

44.

As a result of Defendant's conduct, Plaintiff has suffered mental and emotional distress and other damages, including out-of-pocket losses, all in an amount to be proven upon the trial of this matter.

## COUNT ONE
### RETALIATION IN VIOLATION OF TITLE VII

45.

The allegations contained in paragraphs 1 through 44 are hereby incorporated by this reference.

46.

By complaining of race discrimination and filing charges of discrimination with the EEOC, Plaintiff was opposing practices made unlawful by Title VII of the Civil Rights Act of 1964 and participating in an investigation and proceeding under Title VII, respectively.

47.

By opposing practices made unlawful by Title VII of the Civil Rights Act of 1964 and participating in an investigation and proceeding under Title VII, Plaintiff engaged in activity that is protected from retaliation under, 42 U.S.C. § 2000e *et seq.*

48.

The Defendant's actions in disciplining and terminating Plaintiff following her complaints and charge of discrimination were committed with reckless disregard for Plaintiff's right to be free from discriminatory treatment on account of her opposition to discriminatory practices and her participation in an

investigation and proceeding under Title VII, all in violation of the Civil Rights Act of 1964, as amended.

49.

The effect of Defendant's above-mentioned acts has been to deprive Plaintiff of equal employment opportunities and benefits due her because of her willingness to oppose such discriminatory practices and to file a charge of discrimination and to participate in an investigation and proceeding under Title VII.

50.

The actions taken against the Plaintiff has caused her to suffer both monetary and non-monetary damages to be shown at trial.

51.

Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendant's violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## COUNT TWO
### RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

52.

The allegations contained in paragraphs 1 through 44 are hereby incorporated by this reference.

53.

Defendant's actions in disciplining and terminating Plaintiff  following her complaints of discrimination and the filing of charges of discrimination with the EEOC were committed with reckless disregard for her right to be free from discriminatory treatment on account of her opposition to race discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

54.

The effect of Defendants' above-mentioned acts has been to deprive Plaintiff of equal employment opportunities and benefits due her because of her willingness to oppose such discriminatory practices.

55.

The action taken against the Plaintiff has caused her to suffer both monetary and non-monetary damages to be shown at trial.

56.

As such, Plaintiff is entitled to equitable and monetary relief from Defendants for violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## **RELIEF**

Plaintiff respectfully requests that this Court:

1.     Issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981;

2.     Grant Plaintiff a permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with it, from engaging in any employment practice or policy which discriminates against the Plaintiff or others similarly situated because of their race, opposition to discriminatory or unlawful practices, or because of their participation in this lawsuit;

3.     Order Defendant to make the Plaintiff whole by providing for her back pay, reimbursement for lost benefits, including retirement benefits, social security and other benefits and expenses in an amount to be proven at trial;

4.     Grant to Plaintiff compensatory damages in an amount reasonable and commensurate with the losses imposed upon her by Defendant's unlawful and discriminatory acts, including her pain and emotional distress;

5.     Grant to Plaintiff punitive damages under federal law in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

6.     Grant to Plaintiff a jury trial on all issues so triable;

7.     Grant to Plaintiff her costs in this action and a reasonable attorneys'

fee as provided by federal law; and

8.     Grant such additional relief as the Court deems proper and just.


Respectfully submitted,

/s/ John F. Beasley, Jr.
John F. Beasley, Jr.
Georgia Bar No. 045010
jfbeasley@jfbeasleylaw.com

JF BEASLEY, LLC
31 North Main Street
P.O. Box 309
Watkinsville, GA 30677
Telephone:  706-769-4410
Facsimile:   706-769-4471

Counsel for Plaintiff